Your Honor, in response to your order, I'll be taking 10 minutes endeavoring to save 2 for rebuttal to address the main point raised and then followed by Mr. Guzman on behalf of his client for 5 minutes, Mr. Hickey on behalf of his client for 5 minutes, and then hopefully 2 minutes for my rebuttal. Alright, so watch your time. Yes, Your Honor, clearly I will. Almost 19 years ago, Judge Goodwin, he wrote, the fitness of a felon for his punishment has no bearing on the duty of immigration hearing officers to afford all deportees due process of law. When the violation of that duty, the duty to afford everyone due process of law, is the effective denial of the right to counsel, there is prejudice, not because it's excused, but because it's inherent. When the violation is the right to counsel, prejudice is inherent, and that's because when proceeding with an attorney, the ultimate result of a deportation hearing is never a foregone conclusion. An attorney can always do something to potentially affect the outcome of the proceedings. Everything you say is true on an initial hearing on a removal. Isn't this case about a collateral attack on an old removal where the bus load comes in, the judge, the immigration judge says, anybody who wants a lawyer, raise your hand. Nobody raises a hand. They all get back on the bus and go back to Mexico. Now that, those, when I was writing back there 19 years ago, that's what was going on. Now we're attacking these, collaterally attacking these old deportations. Decades later in some cases. That's absolutely true. Isn't there a difference in collateral attack and the requirement of prejudice and the initial hearing, which nobody argues, you need a lawyer if you want one. Let me answer that in two ways, Judge Goodwin. The answer, in my case, this is not the type of case, in my particular case, Mr. Borbone's case, where it's dealing with somebody bus standing and going before an IJ. Mr. Borbone didn't even go before an IJ. This was one of those expedited styles that they put in place where he was never informed, even in his own language, of a right to counsel, of the right to counsel. And we have a district court finding to that effect that there was a right to counsel violation. So in that sense, the answer must be no. But in a different sense, the answer is yes. We are going back, sometimes decades, as Your Honor pointed out, and looking at it. And we have a test, whether the deportation was fundamentally unfair. That's our Ninth Circuit test coming down from Mendoza-Lopez in 1326D. And the question that's been left open, specifically as recently in 2008 by Rom, is what happens when the violation, though, the due process violation, is the right to counsel. Maybe there's a different analysis there. Certainly in the Second Circuit there is, in the Third Circuit there is, in the Seventh Circuit there is, in the D.C. Circuit there is. We wouldn't even be standing here. The 1326 conviction would not have stood. But we have that question now. That question has not been specifically answered. The 1326 conviction would not have stood on direct appeal of that conviction, right? Correct. You're not talking about collateral attack. It would not have stood on, well, a direct appeal of the conviction. It wouldn't have stood because 1326, the element of the prior deportation, would be invalid, Your Honor, in your circuit. And I'm hoping that that will be the rule as well in this circuit. And I want to get back to the idea of inherent prejudice, because we're not claiming that prejudice is excused, that somehow it's written out of this circuit's case law. This circuit requires prejudice. And the prejudice is inherent in the right to counsel violation. And it's real. My case, I think, does an excellent job of demonstrating why it's real. In my case, had Mr. Borbone obtained a lawyer, and that's what his declaration uncontested said he would have done had he been advised, he would have tried to get a lawyer, a lawyer who's familiar with the very complex, as we heard two cases ago, world of immigration law, could have challenged the documents supporting the Immigration Service's charge of deportability, that he was an aggravated felon. We don't have to prove that that would have necessarily succeeded, but it could have succeeded. Had he been able to demonstrate that they don't have the right documents, he couldn't have been deported as an expedited aggravated felon. That's for sure. He would have had to go before an IJ. And now we're into these big master calendar things where the IJs have tons of people to deal with. And if the IJ said, you know what, as the district court below said, this might not be technically in compliance with the regulations. I don't want to deal with this right now. You know, you came in without inspection. Deport you at that ground. Then we all know voluntary departure is a possibility. I'm not saying that necessarily would have happened. I don't have to. Okay, but since the test is only that you, if there is a prejudice requirement, you would have to show some viable, not necessarily winning defense at the removal. Aren't you undercutting your own argument? Because what you're saying is we can show that in every case. We can show that we can get, we would have gotten to the IJ, and therefore we would have had a chance. Except for those occasional cases where they can't show that because they've got 18 convictions and nobody is going to give them a chance. In which case, they can't show prejudice. So why dispense with it if it's so easy to meet? In our briefing, we think we can make the standard test. But I think in the sense of it being inherent is because there's not those rare cases that, Your Honor, in the typical, it would be very difficult to conceive of a case. And the language in BELOD is particular in a matter as to, so as to potentially affect the outcome of the proceedings. I think I win under the original test. I think we have a clear right to counsel violation, and I think we've demonstrated prejudice. What I think my case can do is take the extra step and show as a demonstration of why it's inherent. There's other things that a lawyer could have done in my case. A lawyer could have gone back into state court and tried to vacate the convictions. A lawyer could negotiate a charge of deportability with the Immigration Service and say, look, you know, as we do with our counterparts at the U.S. Attorney's Office and say, you know, we won't fight this. You give us essentially a charge bargain and we'll go forward with that. The point of inherent prejudice and why I'm saying it's not, doesn't have to be excused, is because there's always something a lawyer can do to potentially affect the outcome of a proceeding. If that's because it's immigration law, or you believe that about cases in general? Because I must tell you, it seems to me there must be some number of immigration cases that are cut and dried, and that person is going back, even if it's Clarence Darrow there. You disagree with that? You think there's always something that somebody could do? I think that there's always something that somebody can do. And by something we mean that raise it to a level of viability. I'm not saying that it is impossible that there is a case out there. So let me say I agree with Your Honor in the hypothetical, that it is possible. I don't want to lose credibility. It is certainly possible that a lawyer could do nothing. But I think typically from all of our experience as counsel, there are very rare times, whether it's in government capacity or in private practice somewhere, where a client walks through the door and you say to yourself, there's nothing I can do for this guy. I mean, lawyers really can. In the Ninth Circuit there's a case law that says only a lawyer can thread the needle of immigration law. Immigration law really is special. We're typically dealing with oftentimes very uneducated, non-English speaking people in some of the most difficult circumstances.  And your argument about the inherent nature of the right to counsel, I think, is valid in immigration cases. But what I'm concerned about is, first of all, you represented that other circuits have done away with prejudice. But I don't think that that is true on collateral attack, only on direct. Do you have any cases from any other circuit where a person is trying to collaterally attack an underlying removal and there's no requirement of prejudice? No, Your Honor. But we've – this Court – So you're asking us to, one, take out the right to counsel and make it, you know, one of the more important due process rights, because we have said that for a due process violation you have to show prejudice. We've said that many times. Right. In fact, in Ramos we said it with respect to the right to counsel. We can argue about that, but that's what we said. Do you want us to say, as of today, immigration law has become so difficult to comprehend and find your way through that the right to counsel is a due process right that stands above every other right that we recognize and that these people who come into our country have to waive? Is that what you're saying? We're going to elevate this right and, therefore, all this other law that we have, that on a collateral attack of a due process right, you have to show prejudice doesn't apply? No, Your Honor. I don't think you need to do that. I don't think you need to say it doesn't matter, prejudice doesn't matter, because I think you can say in the context of a due process. Okay. You want us to say, then, prejudice is required in the context of the right to counsel. It always exists. I think you could say, yeah, there's almost always a case where the lawyer can do something. In my particular case, representing my client, I don't think you have to go that far, but that is the rule that I would urge this Court to imply. Your decision in Ramos, Your Honor, I don't think squarely addressed this issue. I know that's your argument. But right to counsel, we're going down to something that I think Judge Goodwin actually raised in another case when he filed a dissent. Now we've said in Ramos and in other cases that the government violates due process. I think all the district court judges said it here. The government violates due process in these administrative proceedings where you There's no evidence that it's even discussed with them in their native language. They sign off their rights, and then they're deported. And we don't know. The government doesn't seem to be, at least as of the date of these cases, these underlying deportations, making any improvements in ensuring that due process rights are adhered to. So given that revolution or evolution, it's time now that we say, okay, you know, you have to ensure that the due process rights are given, understood, and before you remove them. And if you don't, you will be penalized. You will be penalized in the 1326 situation. I think that is exactly right. And I think that the easiest way for this Court to get to Your Honor's very clear point is simply to hold within the existing framework that the right to counsel violation is inherently prejudicial. I don't think we can do that. I really don't think we can do that because all of our prior cases that require prejudice. And I understand Your Honor's point. I don't want to cut too deeply, but I'd like to answer directly. That's a really important point because I guess short of that, maybe there should be a rebuttable presumption. Or maybe there already is a rebuttable presumption. We just haven't clarified that, that if you can show here is my plausible avenue of relief and the government can say, sorry, you're barred from that. So maybe we already have a rebuttable presumption that we haven't clearly delineated. You know, and I think that that is an excellent point. I think it can be a rebuttable presumption. It could be something to the effect of taking the language from BELOC, that as long as the defendant can show in the right to counsel context that the lawyer could potentially have affected the outcome. I mean, even if we just use the same language, a plausible avenue of relief may have affected the outcome. That's our current existing definition of prejudice. That's right. And I think in the right to counsel context, it's a little bit different than in the traditional context where you're talking about relief. You know, was 212H relief exactly on point for this particular person? In the right to counsel context, I think what you're getting at, it's broader because it's not just a statutory eligibility question. It's what are all the different things that counsel could have done? If you could point to something. I don't know if that's a little bit broader. I mean, an avenue of relief may have affected the outcome. Well, maybe those are two different standards. I think they might be in the context of the right to counsel violation. I think in the right to counsel, it should be, whether you want to call it an inherent prejudice, whether you want to call it a rebuttable presumption. The right to counsel is special in this context because these people have to navigate this law by themselves. So it's different than a regulatory right to have seven days before a hearing or something to that effect. It's a very important right. It flows directly from the due process clause of the Constitution. Maybe our standard of prejudice has been too high, is what you're saying. Maybe the standard. I think there are certain cases. This Court deals with this a lot, and the opinions are really, they diverge. I think the BWAT language is the language. In BWAT, I would note that there was no plausible ground of relief identified or relied upon. In BWAT, this Court found, and I'll stop with this, but this is the language that this Court said was the prejudice in BWAT, and I'm just going to quote it. With an attorney, he would not have been forced to proceed pro se, to present a case with no evidence, to answer the IJ's inquiries without any idea of their legal significance, or to purport unwillingly to waive his appeal. That easily cleared the prejudice hurdle. That is true in almost every single case when you're denied the right to counsel. Don't you need a little bit more than that, though? Like, had an attorney been there, here's what might have happened? And I don't necessarily disagree, and I think we presented that in our case, and I would guess that in almost every right to counsel case, counsel could put forward something that the immigration attorney could have done to assist the client. All right, counsel, you're way over your time. So I understand you have particular arguments on behalf of your clients that you want to raise. Why don't you take a few minutes? Eric Guzman for Mr. Contreras. Your Honors, my client wins under the argument presented by Judge Mr. Bernstein, and the new, at least it seems in the new standard that perhaps the Court is coming up with during this argument, a lawyer definitely could have made a difference, and my client seems to have made a difference. And my client's removal is very similar to the situation described by Your Honor, Judge Goodwin. It was 1994, two years after you wrote the dissent in court, where a busload of people were brought in, and through an interpreter, the judge asked if anyone wants a lawyer. And the interpreter translates, someone says, no, we all want to leave as soon as possible. So someone just kind of elects himself a spokesman for the group, and then they're deported. Assume we're with you. There was no voluntary waiver of rights. Thank you. My point is, one point in your dissent, Judge Goodwin, you say this, if we don't reverse because of a lack of prejudice, it sends the wrong message and invites future cases. Now, these deportations are happening over a decade later, and they haven't gotten better. They've gotten worse with regard to the right to counsel. And I want to echo one point that Mr. Burstein made, that the right to counsel is special, and there is a hierarchy. This Court held that in Hernandez-Gill, saying that it's hard to imagine a situation where a layperson is more in need of the guiding hand of counsel than removal proceedings. And if we look in the criminal context, to waive indictment, you have a right to indictment, you can waive that pretty easily. You can orally waive your right to a speedy trial, but to waive your right to counsel, you have to have a Feretta waiver. Sixth Amendment, then, right? Correct. I think what you're asking us to do, and what I'm grappling with, is the idea of grading the Fifth Amendment due process rights, so that different rights are differently ranked, even though they're all due process, which boils down to, in every case, fundamental unfairness. And I'm just saying, I think it's difficult to parse the due process clause that way. If something is unfair, it's unfair. And unfair means somebody got hurt who shouldn't have gotten hurt. I agree with that. And I don't think the two positions are inconsistent. I agree with what Your Honor is saying. I'm just pointing out that our jurisprudence has a history of elevating the right to counsel, and it should perhaps be treated differently or afforded more deference in the analysis, especially in regards to a collateral attack. And if I could briefly address the point that Judge Warlock made, when the extracurricular cases are direct appeals, someone's appealing from the BIA, and our cases are collateral attacks. But we want a direct appeal, too. Okay. Well, I'm saying, again, in our district, we're assigning those cases back and forth between the different forms. Also, collateral attack is sometimes one of the only ways that these issues get raised, and it's the only time these defendants or clients ever get judicial reviews through a collateral attack. If the Court has any questions regarding the other arguments I raised in my brief or how my client could win under Mr. Burstein's argument. All right. I think we should take up Rez Bonilla. Thank you. Thank you. Good morning, Your Honors. Brendan Hickey on behalf of Mr. Rez Bonilla. I see I'm very low on time. It's all right. You have a couple of different points. I do, Your Honor. And I want to focus primarily on the specific facts of the Rez Bonilla case because he was statutorily eligible for relief as the government did. So he shows prejudice. He does. Before getting to that, two quick points I wanted to make on this other issue. One, the Court raised the question, well, is a collateral attack in 1326d different than a direct review? The answer is no. They've never been treated any differently. The whole basis for Mendoza-Lopez is that an element of a criminal conviction of an agency determination requires that there be some meaningful opportunity for judicial review. Whether that happens on direct review or on collateral attack is immaterial. The cases cited by both government and defense counsel throughout the briefs are both from direct review and from collateral attack, and I'm not aware of any case where they were held to have different standards. The second point, Your Honor, distinguished the Sixth Amendment as being different. Derringer is a case in which the Court found that, really, the Fifth Amendment fundamental due process right to counsel was similarly structural and that ineffective assistance of counsel did not require showing a prejudice. It's difficult to imagine how no lawyer at all could somehow be better than a lousy or ineffective lawyer. Finally, before I move on, the threshold question, the question about prejudice is whether counsel could have affected the outcome of proceedings, and that's not just relief because in immigration court you have a determination of deportability, and only if deportability is found do you even get to the question of relief. And one of the main rules of counsel is to contest deportability. They can do that by collaterally attacking a state conviction, attacking the admissibility of the government's evidence, attacking the legal sufficiency in saying this, in fact, is not an aggravated felony, and so forth. And where the government bears the burden of proof, I don't think we can say we know how this would have turned out because, you know, counsel can always do something, raise some issue. I have had, in fact, cases where I represented a case where I represented someone convicted of an aggravated felony, placed in deportation proceedings. He's, in fact, the case on the Ninth Circuit docket sequentially before Mr. Reyes's, put in immigration proceedings in Texas. The judge set a charge with deportability as an aggravated felony, which he clearly was, set for a merits hearing. The government failed to file any briefs before the call of date, and the judge excluded their evidence at the hearing, saying it wasn't timely filed and terminated proceedings. So looking at it, if he'd not been represented by counsel and just admitted, it would look like we know what would have happened. But the reality was that counsel affected the outcome of proceedings, and counsel always can. With regards to Mr. Reyes Bonilla, the Court indicated, I think, the district judge found a violation of the right to counsel in every case. He didn't in Mr. Reyes's case, but he certainly, the Court certainly should have. Mr. Reyes never said he wanted to waive the right to counsel. He never signed a piece of paper that said he wanted to waive the right to counsel. The only possible argument of a waiver of the right to counsel for Mr. Reyes is that it was inferred or implicit, and this Court has repeatedly and resoundingly rejected implicit waivers of the right to counsel in Ahumada Aguilar, in B.Y.B. Gonzalez, over and over again. Signing a notice of intent that doesn't say anything about waiving the right to counsel is not sufficient evidence of a waiver. In that sense, this case is factually undistinguishable from Mr. Burstein's Bourbon case where the government admits the violation. And moreover, the government essentially tacitly admits the violation in this case because they say the record is unclear, it's not sufficiently developed, and that's inconsistent with their burden to prove a waiver by clear and convincing evidence, which they haven't done, and no one has ever pointed to something in the record that indicates a waiver of the right to counsel. Even if you take all of the forms as God's truth, there's just no waiver of that right, and it has to be explicit. Moving to prejudice, Your Honor, this case doesn't require a broad ruling on prejudice because it's controlled by Calindras Aguilar v. INS and Rios Barrios v. INS. The standards set out in those cases, which has been along the circuit for 20 years, is that where there's a violation of the right to counsel, if an attorney could have more advantageously presented an application for relief and could have marshaled specific facts to support it, then prejudice lies. And the facts of Calindras Aguilar are basically the same as this case. The I.J. did not advise. In both cases, the I.J. failed to advise a respondent of the right, failed to solicit an explicit waiver of the right to counsel. Both respondents sought relief under the Convention Against Torture. Calindras also sought asylum, but that other form of relief was identical and required an identical factual showing. Both were preventing deportation to Guatemala, to the exact same country. And in both, Rios Barrios involved El Salvador, which is a neighboring and not dissimilar nation in terms of conditions. And in both cases, the Court said, if an attorney could have marshaled specific facts to support the application, then there's prejudice. And that is without regard to any analysis of what those specific facts would have been. That finding has been reaffirmed in 2007 in Hernandez-Gil when this Court said, you don't need to show what specific facts would have been raised. You just need to show that you were statutorily eligible, which the government admits in its brief at page 30. They admit that Mr. Rios was eligible for nondiscretionary convention against torture relief in the form of deferral removal. And if he had been able to come up with specific facts to support that application, if counsel could have, then there's prejudice under those, under Calindras, Aguilar, and Rios Barrios, which were the cases on which Balcazar-Alcazar was decided. They're still clearly good law. Finally, Your Honor, the government's real dispute is that Mr. Reyes didn't actually show us the facts that substantiate the convention against torture claim, which, of course, is not the legal standard. He doesn't need to show those facts. But he does show the country conditions, and he does show the high levels of violence and so forth. And given that the Court in Calindras, Aguilar, was dealing with the precise same country and the precise same factual standard, I think we need to apply the precise same law. And finally, Your Honor, Your Honors, the individual who would have been able to present evidence of particularized threat, Mr. Reyes' family in Guatemala, was murdered or were murdered, his cousins were murdered, prior to his collateral attack on his deportation. And I think it smacks of fundamental unfairness to say, well, now that your witnesses have been murdered, you can't show me the specific facts, particularly when the Ninth Circuit is repeatedly held. All you need to show is that you were denied your right to counsel, you were statutorily eligible for relief, and an attorney could have marshaled more specific facts to support that application. All right. Thank you, counsel. Good morning. Kyle Hoffman for the United States. I'd like to start with a distinction which I think needs to be kept in mind, and that's the distinction that the Court raised early on, the distinction between direct review of an INS proceeding and a collateral attack. I think that distinction matters, and I think it matters a lot, and here's the reason why. Actually, I have a number of reasons why. Except for one exception, all of the cases upon which the appellants rely for the rule that it's kind of an open question or there's prejudice presumed, all of those cases arise in the INEXT direct appeal context. Leslie, before I lost the question, you know, is there any other circuit that does it in collateral attack, and the answer was no. Leslie. Actually, you know, I've been thinking about that distinction. We're talking about Section 1326 prosecutions. Correct. And this is an element of the offense, the underlying. The government has an obligation to prove that beyond a reasonable doubt. So it almost takes on a more serious connotation, especially given the sentencing, the years of incarceration that are being handed out in this case, and, you know, it sort of ties into the full 16-level increase in the offense. I mean, it's very grave. I don't disagree with that, Your Honor, but here's why I think the distinction matters. The distinction matters because if you think about the contrast between INS proceedings and direct review and collateral attack, in 1326 cases, they've got lawyers. Not only do they have lawyers, they've got lawyers paid for by the taxpayer and the government. Not only do they have lawyers paid for, they've got experienced lawyers in these matters. Not only that, they are not confined to the record as it existed at the time. They provide declarations. They provide expert witnesses. They provide, I mean, I read a case, Judge Deary in the Eastern District of New York had family member upon family member testify in a 212C hearing. So the record is not confined. With lawyers, which they have and are paid for, they get to attack the deportation. And they have judicial review. In fact they're defending against a criminal prosecution. Understood. But the point I'm trying to make is that if there was any risk that the deportation was fundamentally unfair in such a way that someone who was deported, someone was deported that shouldn't have been, that risk is going to be flushed out by the process. I'm sorry. Which process? The appeal of the removal order? No, no. Not the appeal of the removal order. I'm saying of the proceedings that go on. And that's, of course, a requirement of showing prejudice. Exactly. Okay. On the other hand, one of the difficulties of these cases is that at least you've got a confined record when you're appealing the removal order. Here we are looking back a decade. I understand. We're finding that there was a waiver of rights because we can't, there was no waiver of rights because we can't find a waiver, even if there was one. In some cases where there was a mass waiver, we know that's invalid, but in other cases we can't tell exactly what happened. And it's equally difficult to tell over time whether there was prejudice. Well, I would agree with one part of that question and disagree with another. I don't think it's that difficult to tell about prejudice because counsel's there, counsel knows the area, counsel provides declaration, and they work these cases like crazy. So what standard of prejudice is appropriate to apply in these cases? Well, I would say it's the standard that has always been applied in the 1326D collateral attack, plausible claim for relief. I'm not sure that is the standard because, I mean, it may have been applied. I don't know if we've ever decided that that was the appropriate standard. I mean, seriously, because we've also used the standard may have affected the outcome. I agree that that language exists in the cases. I would suggest it mostly appears in the INS direct appeal. And who decided, what case decided that plausible avenue for relief meant plausible avenue of statutory relief? I mean, I'm not sure all this has been decided. Well, Your Honor, I actually. Tell me the case that says plausible, that prejudice means plausible avenue of statutory relief. I don't remember the exact case, Your Honor, but I do remember looking into it at the time. And I actually think the Ninth Circuit has latched onto that language, which is, by the way, more permissive than other circuits. Well, I used it in Ramos. I know that, but I'm not sure. I don't think the whole question was even argued in Ramos. No. It may have been Ubaldo Figueroa. It may have been the couple of cases that preceded Ubaldo Figueroa. But what happened was, I do remember this, what happened was one defendant said, you know, there's fundamental unfairness, and the court pointed out, you haven't identified even a statute or anything. You haven't identified an avenue. And they said, given that you haven't done that, you haven't given a plausible claim of relief, we're going to deny it. And the later cases latched onto, you have to have at least that. That's, I can say for certain. A collateral review. So you can't remember the case for that? I think they're the cases that are cited in Ubaldo Figueroa, but I'm not positive about that. It's complicated by the statutory language that controls this, which is 1326d, which doesn't even talk about prejudice. Agreed. No, it uses fundamental unfairness. Right. And I know there was an argument in the briefing that somehow or other the 1326d statute overruled the prejudice requirement. I disagree with that, because I looked for legislative history on this, and there was absolutely nothing about overruling pro atovar, which required prejudice. And the only thing that it says is this is an act to limit the availability of collateral attack. So I just don't agree with that proposition. The point, the reason I'm making the pitch about the differences between the direct appeal and the collateral attack is it's true we've gone back and forth using these cases indistinguishably, but I don't think they have to be. And I think this might be a good time to think about why 1326 might be a little different, with lawyers, with a lot of judicial review, with a record that's open and can be created in a way as advantageous as possible to the defendant. So that's my first argument. You know, Judge Wardlaw, you mentioned, the Court mentioned, well, the INS and DHS, they're not getting this right. We keep telling them to do something. And I think that was a concern of Judge Goodwin early on in the dissent and the panel opinion on pro atovar. The only thing I'd say about that is these are still, this was a 1994, I think the latest one was a 2001 deportation we're talking about. So we're not talking about the INS or DHS saying we've just gotten the Ninth Circuit's latest order, do it right, and we're still not doing it. These are still years old, decades, decade plus. So I, and I know. No, it's troubling, too, is that the, is there currently a requirement that the forms be printed in Spanish and in English? I don't know. I know there's the language in the, that it be explained, served and or explained in the case that I'm involved in. And I spoke with the agent. He said he did. Now, there was no hearing, so we don't know for sure. But I don't know. I do know, what I was about to say is I do know this. After the Ramos case, for instance, I know counsel for the government and counsel for INS or DHS, they got together and they heard the court. They're not. No, I know they did because they filed a motion for clarification, which we denied. But the point is, it's not as if it's falling, they're rejecting this. They hear the court. And, again, this goes back to my initial distinction between the direct appeal of INS and collateral attack. I think here, especially, there ought to be a ruling that prejudice is required. It ought to be the same standard, plausible claim for relief. It's not that tough a standard. It's not that hard a standard. I suggest in the case, my case that I briefed, Reyes-Bonilla, that the appellant doesn't need it. But it can be met. Now, I'd also suggest that really this, the, just to finish up on the prejudice issue, this court is really not writing on a clean slate completely. The idea of there being prejudice presumed has been raised before, it's been raised in pro tovar in the first instance. It's been raised in Leon-Leon. It's been raised in Garcia-Martinez. And each time it's been rejected. So when was 1326D enacted? I believe it's 1992. And when was the issue of whether prejudice is required determined after 1992? Which case? Pro tovar. So pro tovar was after 1992? No, I take that. I'm sorry. I may have my timeline mixed up on that. There was Mendoza-Lopez. Then there was? Pro tovar was 1992. Right. I think the statute may have been 1996. I think it was after pro tovar. My head's nodding. So heads are nodding in agreement. But the prejudice requirement was continued. First of all, the statute never said anything about pro tovar and eliminating a prejudice requirement. No, I know it didn't say anything, but 1326D applies. Correct. And it doesn't use the word prejudice. I mean, has anyone gone through this analysis before? It uses fundamental fairness. Well, the courts, I mean, I've cited case upon case after 1996 where the fundamental unfairness plus meaning there has to be prejudice as well. So what kind of prejudice? I mean, so fundamental unfairness. You know, maybe I can address the point this way. This is a quotation from Garcia-Martinez, 2000, after all of this, and it's the case that Your Honor wrote. It was on the opinion and it wrote, The only circumstances under which we suggested no showing of prejudice was necessary was when the administrative proceedings were so flawed that an effective judicial review of the deportation, which might otherwise have been prevented, would be foreclosed. That's at 964, and there's some discussion at footnote 11. And I'm suggesting that when you think about collateral attack, when you think about all the things that are going on in collateral attack, lawyers, judicial review, no closed record, you're going to get judicial review. If the proceedings are so flawed, and it's going to be the rarest of possible cases that the proceedings will be so flawed that you can't tell whether the person would be able to avoid deportation or not. They've got lawyers. They've got the record. They can show it. Can't tell. That's an interesting case. That's easier than plausible showing, I think. It's more liberal in favor of that. It might be. That language might be. Unable to determine. That's prejudice. And, I mean, if the court is inclined to rewrite the rule, which there was some discussion about, maybe a rebuttable presumption, and there is some language in some cases where the burden shifts and the government is then required to show that it's barred. That's barred. That's barred. Yes. And that's, admittedly, there are some cases that use that procedure, and that may be one way to go. I'd suggest that, I mean, just look, for instance, at the case that I briefed, the Reyes-Bonilla case. It's not really necessary because the burdens on the defendant show prejudice. His claim is, I had a claim under the Convention Against Torture, and his lawyer did the best, his current lawyer did the best he could to come up with that information. I suggest it's not enough. He doesn't need it. And he's had the benefit of hindsight, et cetera, to try to meet it. And that shows he couldn't meet it back at the time. The court, even though on different grounds, properly denied the attack. So I think that that kind of procedure is perfectly plausible and is perfectly appropriate, particularly in the collateral attack context. I don't know if I've answered the court's questions. If the court has further questions, I'll be happy to try to answer them. The Contreras case is just the one-issue case. It's just the prejudice. The case I briefed, Reyes-Bonilla, is just the prejudice plus the Convention Against Torture claim. And I think Mr. White had some other issues, and I'll leave it to him if the court has questions for him or if it has further for me. All right. Thank you, counsel. Good morning. Victor White for the United States. And I know Your Honor's had a question as to when did this phrase of no plausible grounds for relief emerge. One of the earliest cases that I found following Pro Atovar was United States v. Leon Leon. That's a 1994 case. And that is at 35 Feb. 3, 1428. The pinpoint site is 1432. And it notes that, like the alien in Pro Atovar, Leon Leon offers no plausible grounds of relief, which might have been available to him but for the deprivation of rights. And if we look at the Martine Bourbon case, I just want to offer a little bit of clarification of the record. His expedited removal order took place in 1999. Now, there was some ambiguity, and the district court did hold that there was a violation of due process where one week before he was issued this administrative order of removal, he was interviewed by an INS officer. He was handed a questionnaire in both English and Spanish, advised of the right to counsel then. And based on the fact that in the form itself, which serves him his administrative removal, the only box that was checked is that basically this form has been explained to him in English and Spanish, and it's not circled what language it was explained to him in. It's an ambiguous record, and so there was a due process violation. However, it's important to remember that this is an aggravated felon. I know that defense, that appellant raises the issue of, well, he could have gone back to state court and vacated the conviction. But Bourbon had two aggravated felony convictions at the time he was placed in these expedited removal hearings. He had one in 1992. He had one in 1997. And so expedited removal hearings are different than the immigration hearings. These are ones where, as a matter of law, Congress has held that aggravated felons are not entitled to relief. And that's precisely the situation that happened here. So the arguments that counsel could have somehow had an outcome in the proceeding where it was clear that the individual, Mr. Bourbon, was an aggravated felon, are unavailing. And unless the Court has additional questions, I'll submit on the brief. No, thank you. Thank you. I'll give you a couple minutes. Very quickly. Just because Mr. White specifically referred to the Bourbon case, I just wanted to address the record that he was never informed of the right to counsel. The government hasn't challenged that. He's referring to a questionnaire on page 99. Your honors can look for yourselves. It certainly does not have it. It does not have the right to counsel. That's absolutely correct. But that case, the facts of that case do undercut your argument that there's always going to be some kind of inherent prejudice anyway, right? I mean, what was the avenue? Going to state court twice to get rid of prior aggravated felonies on grounds that we don't know what he could have attacked them on? I think we've already demonstrated the normal prejudice, Your Honor. He was, under this Court's case law, if you're not deportable as charged, so he would have to, there was only one charge of deportability based on one 1997 aggravated felony. That's our, we spend a large portion of our brief attacking the proof the government would have had to demonstrate at removal hearings by clear and convincing evidence under this Court's decision in S. Young that he was in fact convicted of that aggravated felon. The only thing the immigration judge could have considered under Regulations 287A were properly certified documents. I think we've done at least, hopefully, a decent job of showing why those documents weren't properly certified. Even if Your Honor disagrees with my arguments, I think they were. I mean, that's what happened at the district court. He said, maybe technically you're right, I don't buy it all the way. We've demonstrated prejudice by that very, and I just, I wanted to point Judge Wardlaw back to her opinion in Ramos, where Ramos does base much of its decision of the 1326D context on the immigration cases. And I also think it's noteworthy that Ramos specifically cites the potentially effects language in Ramos. I believe Your Honor even quoted it in Ramos. So I would say that those cases, the INS cases, are, do go back and forth in the 1326D context. There is no distinguishing case law here, and in fact, Your Honor just recently used those cases. Thank you very much. Thank you very much. All right. The last three cases will be submitted, and this session of the court is adjourned. Thank you.
judges: Cogan, Goodwin, Wardlaw